please the court my name is Lynn Thomas I'm appearing on behalf of the appellant William J twice my understanding that mr. Martel does not plan to make a separate argument in this case so I don't know whether we get 20 minutes or 10 well you can take 10 if you want why don't we go for 10 since he's not going to argue and it was two cases which made it 20 and if you need a little extra time we'll give it to you thank you your honor this is a case involving a tax fraud prosecution against mr. Tway and mr. Ford on account of activities in an organization which was nonprofit organization called free speech foundation which operated under Idaho law a series of bingo games I think it's important to mention that this is a nonprofit corporation because the state statutes are a little confusing with respect to charitable purposes and nonprofit corporations sometimes a nonprofit organization is referred to in the statutes as having a charitable purpose but under state law the nonprofit purposes of the organization really subsumed under that that time these were or this organization was a nonprofit organization the Secretary of State certificate certified that and its activities had to qualify for tax exempt it did have a tax exempt qualify under the federal system that's correct that's what this case is all about that's right because the the government alleged and in the view of the district court proved that there had been a conspiracy to violate the the federal statute relating to obstructing and impairing the Internal Revenue Service in this function of collecting federal taxes mr. Ford and mr. Tway were both convicted of the conspiracy count mr. Tway was convicted of aiding and abetting in the filing of these false returns the the thrust of the whole thing was that the program services amount on line 13 of the tax-exempt returns forms 990 overstated certain amounts these were monies that had been given by the organization under its program services obligations for research grants to mr. Tway and mr. Ford for the production of a book and for scholarships mr. Thomas let me ask you a couple of questions which lead me to really to standard a review and how we deal with this particular matter is it true that the defendants waived their right to a jury trial that's correct is it true they also waived their right to specific findings of fact and conclusions of law that's correct so what I have to do is I because we didn't have any of that I have to review the record you suggest construing the evidence most favorable to the prosecution that the correct and it isn't it also true that even though there was a motion to dismiss the indictment which was filed and in that the pre indictment delay that you now allege on appeal was not a ground for the motion I am not sure that that's a fact the idea it is a fact it is yes is there something wasn't reported in there I had thought at the beginning of this process that there had been I mean you did file a motion to dismiss the indictment you just say the indictment doesn't sufficiently allege the offenses government failed to show probable cause and the prosecutor committed misconduct had nothing in there about pre indictment delay whatsoever that's correct with respect to that motion what we're saying now is that there's a due process problem with the inferences drawn from materials that were not available because of pre indictment delay so I'll just pass file together the pre indictment delay and suggest to the court there's a due process problem which the court can take up at any time without respect of whether there was there was any preservation of the issue by virtue of its having been included in a motion but one of the things that I wanted to highlight here and that I wanted to go into most specifically is the tax liability aspect of section 72062 the cases of this circuit and in particular United States versus Salerno make it pretty clear that the defendants conduct must have affected tax revenue this was a non-profit tax exempt organization the evidence which was unrebutted was to the liability notwithstanding its tax exempt status furthermore the government if you assume that it was in fact a valid non-profit corporation and that it was not in fact as the district court judge found a corporation that existed to profit the two defendants their personal profits I don't think that that the evidence would suggest that they profited from the program services except to the extent that they were given these grants which were in fact contingent and might eventually have been the notes the contingent notes that they that's correct if you believe that they could provide research grants why were the promissory notes hidden from the accountant I don't know that the that it's a fair assumption from the evidence that the promissory notes were hidden from the accountant were they given to the accountant? I don't believe I think his testimony was largely that he didn't recall so much about whether he had been given the promissory notes he knew about them the attachments to forms 990 that he apparently prepared made reference to the promissory notes and periodically there would be a requirement for review the of the the grant process and that promissory notes had been executed in order to guarantee the performance under the grants so the account knew something about it I'm not sure I quite followed that so they were it was a grant but they had to put up a promissory note in order to get the grant that's correct they executed contingent promissory notes which said in fact that we don't read the book we have to give the money back so it really wasn't a grant it was not a grant in in the normal sense I guess my worry is that when I'm looking at the district judge now he hadn't got a jury given pre widespread stuff in Idaho I've heard a DJ say let the evidence in for what it's worth I don't even have to worry about it we just go forward and find out whether there's sufficient evidence to make the case and they're ones that are determining whether they're guilty or not guilty and they're not even have they don't even have to give you a specific finding of fact or a specific inclusion law all I got to do is come to the bottom line and then I all I have to find is some evidence viewed in the most favorable way to the prosecution where can I find that no trier of fact what's your best case that no trier of fact could have found on false returns rating or betting or the agreement or the knowing and will for the overt act I mean I went through then trying to find all the evidence here and trying to see if I could find just no evidence to help the old DJ along and I didn't even have to see if he even agreed with me based on how you went at it what's your best case well the best case is is United States versus Salerno which says in fact this isn't even a crime if you don't have a tax liability you don't get to get a conviction under 7206 to assuming away the fact that this was not in fact a non-profit foundation is assuming that finding by the district court away well it it was it was a non-profit organization under state law it was authorized to do what it did with respect to the bingo revenues it would not have had the Secretary of State as such but it did not conduct itself in that manner it did not conduct itself in a manner of profit-making corporation it distributed its bingo revenues as required by the state law all of these revenues were put out in exactly the way the law required which is I guess depends on how you look at the evidence I thought it was somewhat indicative that given what we have here the evidence would surely show that for that income of $225,000 currency and $100,000 in currency to make personal investments we get all kinds of stuff in here Tway used family members accounts to run his businesses gave information I mean I guess judge Wardlaw's question is pretty straight sure but there just isn't any evidence that Mr. Tway got any money except for these grants and he had executed notes to guarantee his performance under these research grants let me ask you this so the defendants have been released from prison he is still on a probationary and I assume there's other collateral consequences I'm sorry I assume there's other consequences from the sentence that make this this bill is not moved in other words that will correct yeah okay thank you thank you I'll reserve a few seconds thank you may it please the court my name is Serena case Hargrove and I represent the trial counsel said he due to his busy trial schedule was not able to attend this argument mr. Daly the CPA who created the tax returns that were central to this case testified that when he prepared the returns for free speech foundation in the years 1999 and 2000 he was asked were you aware of the promissory notes from the defendants or to the defendants from the organization he said no this is on page government's excerpt of record 119 to 120 then the prosecutor asked him when were you first aware of them and he said within the last year in preparation for your testimony on behalf of mr. Tway and mr. Ford he said if that's the way you want to describe it yes he was not aware of the promissory notes until this action began at that point apparently mr. Ford and mr. Tway gave them to him and he looked at them at that time it's interesting to the the promissory notes which were supposedly for grants to mr. Ford and mr. Tway I count for but a small part of the program service item on grants for both years so even if we assume that those promissory notes were in fact given to mr. Ford and mr. Tway that doesn't take care of the entire problem for them because there's still a significant amount of money remaining to be explained furthermore the grants were in direct contravention of the articles of incorporation that mr. Tway himself drafted those articles contain non officer of that nonprofit or charitable organization as officers they were not allowed to to receive such grants under their their own rules furthermore they were never reported on the form 990s when those documents were filed there's a place to report amounts that are owing to the corporation or that may be owing they were never reported mr. Daly the CPA also testified that he was told to use the category research grants for all checks to cash and that's what we had a great deal of here were checks written out to cash the government in were significantly overstated in the 1999 and 2000 form 990s evaluated and reconstructed books for the organization there were 11 bank accounts that the IRS agents went through there was an entire cart full of bank records that the government had with it and had summarized five or six bank accounts were clearly used by the free speech foundation and there were many many checks written out to cash indeed Dr. Weeks the president of the president of the foundation in some of those years testified that he was asked by Mr. Tway to sign blank checks for the foundation and he didn't think anything of that he was really a president sort of a name only testified that he was there to make sure that they satisfy the state rules for officers after this extensive searching inquiry into bank records and interviewing witnesses IRS agents could find absolutely no record of any scholarship given to anyone in the years that were covered by the 99 and 2000 tax returns government had to prove a negative had these program services amounts which the defendants alleged went to scholarships into grants and the government had to show that in fact they were able to trace this check and cash amounts to bank accounts controlled or in the name of Tway or Ford no your honor not directly when there were not checks written to Mr. Tway or Mr. Ford what they were able to see was that there were tremendous number of checks written to cash by the foundation and Mr. Ford had tremendous amounts of cash there was also testimony that Mr. Tway operated using primarily cash his finances were very difficult to trace because he didn't keep records he didn't keep bank accounts in his own name there was testimony that he used cash as well Mr. Ford because he did keep traditional bank accounts and did file taxes and so on they were able to do an accounting whereby they evaluated all of his known income and all of his known expenditures and that's where they found the $225,000 extra dollars he gave at one point $100,000 in cash to the owner of a nightclub in Boise and then returned and gave him $50,000 more in cash that was part of that $225,000 so what we know is that the defendants had significant amounts of cash you know that the corporation issued many many checks to cash and from that inferences can certainly be drawn reasonably and I believe that's what ever prosecuted for their personal tax returns they were not they were not and Mr. Tway it's interesting Mr. Tway by not filing returns and by not keeping any records at all it would be hard to establish the amount of income he ever received through all the accounting that the IRS agents did they had a very difficult time so it's unclear that he would even meet the requirements for the personal income tax Mr. Ford certainly might but he was not prosecuted for that I'm happy to answer any other questions if you have them then I'll sit down thank you very much counsel all right you can have one minute just a couple of things if it please the court I wanted to mention the non-annealment provisions of the Articles of Incorporation I think the government is mistaken in saying that these grants were a violation of those government's excerpt of record page 18 and 19 contains the Articles of Incorporation they provide that the corporation should be authorized pay reasonable compensation for services rendered and make payments and distributions and furtherance of the purposes established in these articles and that income the corporation may be I don't think it's as accurate to say that the book grants were somehow or other improper under the Articles of Incorporation the other point that I want to make is that Mr. Ford's $225,000 dealings in the free speech foundation bingo account is having to do with Mr. Tway who was surprised to hear about it apparently Mr. Ford simply deposited money in the account and then took it out it seems to be irrelevant to the principal purposes of this prosecution and finally I'd say the fact the government found it hard to trace anything is also sort of irrelevant what we have here is a kind of inference building process in which the government really says in the circumstances of this case we can't find anything so you have to believe all or disbelieve all of the affirmative evidence of innocence that was presented on behalf of Tway and Ford we think the conviction needs to be reversed all right thank you counsel United States v. Ford and Tway will be submitted and this session of this court is adjourned for today all rise this court for this session stands adjourned
judges: Wardlaw, Paez, Smith N. R.